CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 2 3 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| LINDA COFFEY | ) |
| Plaintiff, | ) Civil Action No.: 5:05CV00010 |
| v. | ) **MEMORANDUM OPINION** |
| | ) By: Hon. Glen E. Conrad |
| KEVIN W. MORRIS | ) United States District Judge |
| Defendant. | ) |

Linda Coffey brings this action pursuant to 42 U.S.C. § 1983 against Kevin W. Morris, alleging that the defendant violated her Fourth and Fourteenth Amendment rights. Ms. Coffey also asserts several state claims against the defendant, including assault and battery, false arrest and false imprisonment, and malicious prosecution. The case was filed in this court on February 4, 2005. The case is currently before the court on the defendant's motion for summary judgment. For the following reasons, the court will grant the defendant's motion with respect to the plaintiff's § 1983 claims. The court will dismiss the plaintiff's state claims.

## BACKGROUND

On April 1, 2003, the plaintiff was a passenger in a car driven by her son, Ralph Coffey, III. The two were returning to their home at 41 Gravel Ridge Road from picking up two pizzas, and Ms. Coffey was holding the pizza boxes in her lap.

The defendant, Waynesboro City Police Officer Kevin Morris, was running a radar detector on the side of Gardner Street, and turned on his police lights because he detected that Ralph Coffey was driving 41 m.p.h. in a 25 m.p.h. zone. Ralph Coffey pulled into a circular driveway and stopped in front of his house, and Officer Morris pulled in behind the car.

1

Officer Morris approached the vehicle, and told Ralph Coffey that he was going to receive a summons for speeding, and that both he and Ms. Coffey should stay in the vehicle. Officer Morris got Ralph Coffey's license and registration and went back to his patrol vehicle.

Ralph Coffey, Jr., Ms. Coffey's husband, had been watching from inside and came out of the house. Officer Morris told him that the best thing would be for him to stay inside.

Officer Morris started back towards the vehicle, and Ms. Coffey stepped out of the vehicle. At that point, Officer Morris went towards Ms. Coffey, grabbed her left arm, and tried to handcuff her. Ms. Coffey resisted Officer Morris' attempts to handcuff her.

## DISCUSSION

The case is presently before the court on the defendant's motion for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted by the court, "only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law ...." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (internal quotations omitted). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985).

2

## Plaintiff's § 1983 Claims against Officer Morris

Section 1983 imposes civil liability on any person acting under color of law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In this case, Ms. Coffey alleges that Officer Morris deprived her of her Fourth and Fourteenth Amendment rights when the officer detained and arrested her without probable cause, using excessive force.

Officer Morris contends that he is entitled to qualified immunity with respect to Ms. Coffey's § 1983 claims. Qualified immunity protects government officials from civil damages in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining the applicability of a qualified immunity defense, the court must engage in a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The "threshold question" in the qualified immunity analysis on summary judgment is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right." Id. If the answer to this question is "no," the analysis ends and the plaintiff cannot prevail. Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002). If the answer is "yes," the court "must then consider whether, at the time of the violation, the constitutional right was clearly established, that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 201-202)). The United States Court of Appeals for the Fourth Circuit has emphasized that qualified immunity protects law enforcement officers from "bad guesses in gray areas" and it ensures that they may be held personally liable only "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Ms. Coffey's first § 1983 claim is that Officer Morris violated her Fourth and Fourteenth Amendment rights by detaining her without probable cause or reasonable articulable suspicion. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The United States Supreme Court has analyzed Fourth Amendment seizures based upon "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)). To determine if a seizure is reasonable, the court must weigh the "public interest" against the "individual's right to personal security free from arbitrary interference by law officers." Mimms, 434 U.S. at 109 (internal quotations omitted).

Neither the United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit has addressed the issue of whether an officer may order the passenger of a lawfully stopped vehicle to remain in the car. The Supreme Court, however, has held: that a police officer, "as a matter of course," may order the driver of a lawfully stopped vehicle out of the vehicle, Mimms, 434 U.S. at 110; that a police officer with a reasonable belief, based on specific and articulable facts that the suspect is dangerous, may search areas of the passenger compartment or vehicle where a weapon could be found, Michigan v. Long, 463 U.S. 1032, 1049 (1983); and that a police officer making a lawful traffic stop can require passengers to step out of the vehicle as a matter of course, Maryland v. Wilson, 519 U.S. 408, 410 (1997).

In Wilson, the Supreme Court balanced the passenger's liberty interest against the public interest in officer safety. 519 U.S. 413-14. The Court found the liberty interests of the passenger to be stronger than those of the driver of a stopped vehicle, because there has been no probable cause to stop or detain the passengers based upon the traffic stop. Id. at 413. The Court

4

described the stop of the passengers as a "minimal intrusion," however, and therefore held that the strong public interest in officer safety outweighed the liberty interest of the passenger. Id. at 413-15. In support of this holding, the Court observed that, "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." Id. at 414.

Some federal and state courts have extended the rule of Wilson, finding that ordering a passenger to remain inside of or to get back into a lawfully stopped vehicle is valid. This issue has been addressed by the United States Courts of Appeal for the Third, Ninth, Tenth, Eleventh, and District of Columbia Circuits. See United States v. Moorefield, 111 F.3d 10, 13 (3d Cir. 1997) (applying the Wilson analysis to a situation where police officers ordered a passenger to remain in the vehicle and put his hands in the air during a traffic stop, and finding that "the benefit of added officer protection far outweighs this minor intrusion [of ordering the passenger to remain in the car with his hands in the air]"); United States v. Williams, 419 F.3d 1029, 1034 (9th Cir. 2005) (finding that "it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because the concerns for officer safety originally announced in Wilson, and specifically the need for officers to exercise control over individuals encountered during a traffic stop, outweigh the marginal intrusion on the passenger's liberty interest"); United States v. Holt, 264 F.3d 1215, 1223 (10th Cir. 2001) (using the situation where an officer orders a passenger to remain in the vehicle as guidance where "considerations of officer safety [] outweigh fairly intrusive conduct during a traffic stop"); United States v. Clark, 337 F.3d 1282, 1288 (11th Cir. 2003) (finding that the officer's actions were objectively reasonable in ordering a passenger in the vehicle to get into the car as the officer investigated the violent conduct of the driver and the passenger); Rogala v. District of Columbia, 161 F.3d 44, 53 (D.C. Cir. 1998)

5

(finding that, under the circumstances of the case, "it follows from Wilson v. Maryland that a police officer has the power to reasonably control the situation by requiring a passenger to remain in a vehicle during a traffic stop"). In addition, the Court of Appeals of Virginia has addressed a similar issue, citing Rogala in support, and finding that an officer can order the driver of a vehicle back into a car, because such an order is a de minimis intrusion and reasonable due to the "weighty public interest in officer safety." Alston v. Virginia, 581 S.E.2d 245, 252 (Va. Ct. App. 2003) (internal quotation omitted). In Alston, the Court found that although the circumstances of that case involved an "overtly dangerous" situation, the "reluctance to second-guess the judgment of experienced officers is not limited to such extreme situations."[1] Id.

The Court of Appeals for the Fourth Circuit has applied similar reasoning in United States v. Sakyi, 160 F.3d 164 (4th Cir. 1998). In that case, the issue was whether a passenger in an automobile could be "patted down" in connection with a lawful traffic stop. Id. at 165. The Court compared Mimms and Wilson, which required merely a "generalized risk to justify police action," in order to make occupants exit a vehicle, with Terry and Long, which required "a specific, articulable suspicion of danger before police officers are entitled to conduct a 'pat-down.'" Id. at 168. The Court found that the greater the intrusion, the greater the justification required. Id. The "pat-down" at issue in the case was "substantially more intrusive than an order to exit a vehicle or to open its doors," and therefore the Court held that an officer must have justification for such a "pat-down" beyond the mere justification for the traffic stop. Id. at 169.

---

[1] The plaintiff cites to a Maryland case with facts similar to those in her case, Dennis v. Maryland, 693 A.2d 1150 (Md. 1997). Although the facts are similar and the court found that the officer's "unexplained belief" that officer safety was at risk was not sufficient to justify ordering the passenger to remain in the car, this court chooses to follow the application of Wilson by the federal circuits that have addressed this issue.

6

An order to a passenger to remain in the car is more similar to the intrusions at issue in Mimms and Wilson than to the "pat-down" search in Sakyi, for which an officer must have a justification beyond the generalized risk to police safety. It is reasonable under the Fourth Amendment for an officer to order a passenger to remain in an automobile due to the generalized concerns for officer safety discussed in Wilson, and the need for officers to exercise control during a traffic stop. These interests outweigh the de minimis intrusion upon the passenger's liberty, and the Constitution does not prohibit an officer issuing an order for a passenger to remain inside of a lawfully stopped vehicle to maintain the status quo during a traffic stop. With these principles in mind, the court concludes that requiring Ms. Coffey to remain in the car during the lawful traffic stop of her son did not violate her Fourth and Fourteenth Amendment rights. Even if an articulable suspicion of danger is required for the seizure to be reasonable, the court concludes that the facts of this case are sufficient to justify a reasonable suspicion of danger.

Ms. Coffey's second § 1983 claim is that Officer Morris violated her Fourth and Fourteenth Amendment rights by arresting her for obstruction of justice without probable cause. The court must determine whether the evidence, viewed in the light most favorable to Ms. Coffey, leads to the conclusion that the seizure violated the Fourth and Fourteenth Amendments. This discussion is governed by the court's conclusion that Officer Morris' order to remain in the vehicle was lawful. Because the order to remain in the vehicle was lawful, Officer Morris' belief that Ms. Coffey was violating the obstruction statute by getting out of the car was likewise reasonable, as was his use of force to effectuate the resulting arrest. Officer Morris' arrest of Ms. Coffey and his use of force are therefore shielded under the doctrine of qualified immunity.

7

The Fourth Amendment prohibits only unreasonable seizures. "As a general rule, after initial questioning, any further detention ... is reasonable for Fourth Amendment purposes only if it is 'based on consent or [on] probable cause [for arrest].'" Figg v. Schroeder, 312 F.3d 625, 636 (4th Cir. 2002) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 882 (1975)). An officer has probable cause for arrest if, "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984). For an officer to have probable cause to arrest, he need not know with certainty that the suspect is guilty, but only have "facts and circumstances within [his] knowledge ... sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [the suspect] ha[d] committed ... [the] offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

Officer Morris contends that he had probable cause to believe that Ms. Coffey had violated Virginia Code § 18.2-460 (Obstructing justice). Pursuant to this statute, "[i]f any person without just cause knowingly obstructs ... any law-enforcement officer in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so ... shall be guilty of a Class 1 misdemeanor." Va. Code Ann. § 18.2-460 (2005). For Officer Morris to have had probable cause to arrest Ms. Coffey for obstruction of justice, "the facts and circumstances must have warranted a reasonable belief that [she] was or was on the verge of, unlawfully obstructing [the officer] in the performance of his duties." Wilson v. Kittoe, 337 F.3d 392, 398-99 (4th Cir. 2003) (emphasis added). The Virginia courts have defined obstruction as "more than merely render[ing] an arrest more difficult or inconvenient than it might otherwise have been." Id. at 399. The Fourth Circuit Court of Appeals has acknowledged

8

the distinction drawn by the Virginia courts between conduct that "merely impedes or frustrates the officer, which does not ground liability under the Obstruction Statute, and conduct that intentionally thwarts or prevents an arrest, which does." Id. at 400.

Considering the totality of the circumstances[2] known to Officer Morris at the time of the arrest, the court concludes that there was sufficient information to warrant the belief of a reasonable officer that there was probable cause for the plaintiff's arrest for violation of the obstruction statute. Officer Morris issued a direct order to Ms. Coffey to remain in the car. The court has concluded that this order was lawful under the Fourth Amendment based on officer safety concerns and the authority of an officer to control all movement in a traffic encounter. Despite this direct order, Ms. Coffey exited the vehicle and began walking toward her residence. A reasonable officer could have believed that there was probable cause to arrest Ms. Coffey for violating the statute.[3] Even if the arrest had been unconstitutional, there is no reason to believe that Officer Morris could have known that his actions were unlawful, and he would therefore be protected by the doctrine of qualified immunity.

Ms. Coffey's third § 1983 claim is that Officer Morris' use of excessive force during the arrest violated her Fourth and Fourteenth Amendment Rights. The United States Supreme Court has held that, "claims that law enforcement officers have used excessive force ... in the course of

---

[2]For example, Ralph Coffey did not pull over when Officer Morris activated his lights, forcing Officer Morris to follow him into the driveway, and Officer Morris thought that the driver was "trying to allude [sic]" him. (Def.'s Dep. 34, July 15, 2005).

[3]In retrospect, it is evident to the court that Ms. Coffey was not obstructing justice, but was simply carrying the pizza boxes toward her home. The reasonableness of Officer Morris' belief that Ms. Coffey was obstructing justice, however, must be evaluated from his perspective "at the time the arrest occurs." United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984). Officer Morris need not have known with certainty of a violation; there must only have been, "facts and circumstances within the officer's knowledge ... sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Burrell v. Virginia, 395 F.3d 508 (4th Cir. 2005) (internal quotation omitted) (finding qualified immunity when the criminal proceedings terminated in the plaintiff's favor but the arrest was supported by probable cause).

9

an arrest ... or other seizure ... should be analyzed under the Fourth Amendment and its reasonableness standard ..." Graham v. Connor, 490 U.S. 386, 395 (1989). This requires balancing the intrusion on individual interests against the government interest at stake. Id. at 396. Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

The severity of the crime, as discussed supra, weighs in favor of Officer Morris, as he had a "reasonable suspicion that criminal activity was afoot" when Ms. Coffey failed to obey his order to remain in the car. See Turmon v. Jordan, 405 F.3d 202, 208 (4th Cir. 2005). Second, Ms. Coffey could have posed an immediate threat to Officer Morris' safety, a reasonable assumption when she refused to disobey his order, particularly in light of the danger to officers during traffic stops recognized in Wilson. See Maryland v. Wilson, 519 U.S. 408 (1997) ("danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car"). As the United States Supreme Court has recognized, a determination of reasonableness, "must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary ...." Graham, 490 U.S. at 396-97. Third, Ms. Coffey admitted in her deposition that she resisted arrest by pulling away from Officer Morris when he tried to handcuff her. (Pl.'s Dep. at 29-31, July 15, 2005.) Officer Morris' actions were therefore objectively reasonable, and did not violate the Fourth and Fourteenth Amendment rights of Ms. Coffey.

## Summary

For these reasons, the court concludes that the facts viewed in the light most favorable to the plaintiff do not establish a violation of her constitutional rights. The court concludes that Officer Morris' order to remain within the vehicle did not constitute a violation of Ms. Coffey's constitutional rights. The court concludes that once the plaintiff violated Officer Morris' order, it was reasonable for the defendant to believe that there was probable cause to support the arrest of Ms. Coffey and that it was reasonable to apply some measure of force in order to accomplish the arrest. Although it is unnecessary to reach the second step of the qualified immunity analysis, the court notes that even if Officer Morris had acted unlawfully, the officer's actions did not transgress any bright Fourth Amendment lines. Accordingly, Officer Morris is entitled to qualified immunity, and the court will grant his motion for summary judgment with respect to the plaintiff's § 1983 claims.

## Plaintiff's State Claims

Ms. Coffey asserts several state claims against the defendant, including assault and battery, false arrest and false imprisonment, and malicious prosecution. Having found in favor of the defendant on the plaintiff's federal claims, and considering the factors of convenience and fairness to the parties, existence of underlying issues of federal policy and comity, and judicial economy, the court declines to exercise jurisdiction over her remaining state claims. See 28 U.S.C. § 1367(c)(3); see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Plaintiff's state claims will be dismissed. See Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (noting that remands to State court are not appropriate for cases filed initially in federal court, citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988)).

## CONCLUSION

For the reasons stated, the defendant's motion for summary judgment is granted with respect to the plaintiff's § 1983 claims. The remaining state claims against the defendant will be dismissed.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 23rd day of November, 2005.

*/s/ Jack Carrol*

United States District Judge